## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL ASSOCIATION OF HOME BUILDERS** ) <br> **1201 15th Street, N.W.** ) <br> **Washington, D.C.  20005-2800** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES ARMY CORPS OF ENGINEERS,** ) <br> **441 G Street, N.W.** ) <br> **Washington, D.C.  20314** ) <br> ) <br> **and** ) <br> ) <br> **FRANCIS J. HARVEY, SECRETARY OF THE ARMY,** ) <br> **101 Army Pentagon** ) <br> **Washington, D.C.  20310-0101** ) <br> ) <br> **and** ) <br> ) <br> **LT. GEN. CARL A. STROCK,** ) <br> **CHIEF OF ENGINEERS,** ) <br> **UNITED STATES ARMY CORPS OF ENGINEERS** ) <br> **441 G Street, N.W.** ) <br> **Washington, D.C.  20314** ) <br> ) <br> **LT. COL. ROBERT J. RUCH, DISTRICT ENGINEER,** ) <br> **PHILADELPHIA DISTRICT, UNITED STATES** ) <br> **ARMY CORPS OF ENGINEERS** ) <br> **The Wanamaker Building** ) <br> **100 Penn Square East** ) <br> **Philadelphia, PA  19107-3390** ) <br> ) <br> **Defendants.** ) | **Civil Action No. 1:06CV00502** <br><br> **COMPLAINT** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff states and alleges as follows:

## NATURE OF THE ACTION

1.      This action, brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*, challenges an agency statement of general applicability that changes the regulatory regime for determining whether the Defendants United States Army Corps of Engineers, *et al.* ("Corps"), have jurisdiction over the uses of private property under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1344, 1251-1387.

2.      The Corps issued the challenged document.  *See* Philadelphia District Technical Support Document, "Clean Water Act Jurisdiction Over Streams and Ditches" (July 3, 2003) (hereinafter "Philadelphia Ditch Rule" or "Ditch Rule") (attached as Exhibit 1).  The Ditch Rule modifies what bodies of water are considered "waters of the United States," for purposes of the CWA's definition of "navigable waters" at 33 U.S.C. § 502(7), and are thus subject to regulation by the Corps.

3.      Plaintiff, National Association of Home Builders ("NAHB"), challenges the issuance of the Philadelphia Ditch Rule as violative of the APA, 5 U.S.C. § 553, because the Corps did not follow any of the requirements for an agency rulemaking.

4.      As a remedy for the Corps's violations of law, Plaintiff seeks an order:  (1) declaring that the challenged Philadelphia Ditch Rule violates the APA; (2) declaring the Ditch Rule to be unlawful and setting it aside; (3) enjoining the Corps and the Philadelphia District from applying or enforcing the invalid Ditch Rule; and (4) remanding the Rule for rulemaking proceedings consistent with the APA, including clarification of the definition of "waters of the United States" in the context of ditches.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

28 U.S.C. §§ 2201-02 and Fed. R. Civ. P. 57 authorize the requested declaratory relief.

Injunctive relief is authorized by 28 U.S.C. § 2202.  Judicial review of this final agency action is

authorized by §§ 10(a), 10(c), and 10(e) of the APA, 5 U.S.C. §§ 702, 704, and 706.

6.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C.

§ 703.

## PARTIES

7.    Plaintiff NAHB is a national trade association incorporated in the State of Nevada.

NAHB consists of more than 225,000 builder and associate members organized into

approximately 850 affiliated state and local associations in all 50 states, the District of Columbia,

and Puerto Rico.  Its members include individuals and firms that construct single-family homes,

apartments, condominiums, and commercial and industrial projects, as well as land developers

and remodelers.

8.    Through its advocacy function on behalf of the Nation's home builders, NAHB

represents its members in legal, regulatory, and legislative matters affecting the use and

development of their land.  It is germane to NAHB's organizational purpose to ensure that its

members can use their property to the fullest extent allowed by law so that they may build and

supply housing for all people throughout the United States, regardless of income level, race, or

nationality.

9.    As a matter of organizational policy, NAHB's members have directed the association's

staff to advocate that:  "Federal wetlands regulation should be limited to the geographic scope

intended by Congress when it included the word 'navigable' in the Clean Water Act…."  *See*

3

NAHB, 2005-2006 Legislative and Regulatory Policy Handbook, at 55.  NAHB's members have directed its staff to seek policy solutions that, among other things:  (A) "Urge the [Environmental Protection Agency and the] Corps to use an interpretation of their CWA authority that is consistent with Congressional intent and the Supreme Court's holding in [*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs,* 531 U.S. 159 (2001)], that 'navigability is the central factor in determining the geographic reach of the CWA'"; and (B) "Urge the agencies to provide a set of clear and common sense criteria for making jurisdictional decisions that can be understood by members of the regulated community and can be uniformly applied in all of the Corps' … districts."  *Id.* at 57.  This lawsuit is intended to implement NAHB policies.

10.    Independent of this litigation, NAHB has expended significant resources to ensure that its members, and the governmental agencies that regulate them, understand and faithfully implement the goals and requirements of the CWA.  In this regard, NAHB has devoted staff and monetary resources to conduct research under the CWA, including research that specifically addresses the proper regulatory jurisdiction of the Corps; sponsor and deliver educational programs to assist its members with CWA compliance; draft regulatory comments to ensure that (i) Environmental Protection Agency ("EPA") and Corps determinations of jurisdiction are consistent with the CWA and (ii) water quality standards adopted by states for waters of the United States are consistent with the CWA; prepare legislative language and supporting documents for discussion on Capitol Hill to clarify the extent of CWA "navigable waters" jurisdiction; and prepare and distribute publications, for the media and public at large, regarding the jurisdictional reach of the CWA.

11.    NAHB's advocacy function regarding the implementation of the CWA has also targeted the question whether ditches can be considered "navigable waters."  In this regard, NAHB has

spent staff time and monetary resources writing articles and giving educational presentations to its members, government officials, and other groups and associations, regarding whether ditches are "navigable waters" under the CWA.  Furthermore, independent of this suit, NAHB has been involved in litigation pertaining to the federal government's CWA authority over ditches.

12.    The activities of NAHB's members are subject to regulation under the Ditch Rule challenged in this Complaint.  Members of NAHB have in the past and will in the future be bound by the Philadelphia Ditch Rule because, under the Rule, they are required to obtain a permit from the Corps prior to filling or moving ditches in connection with their home building activities.

13.    The Philadelphia Ditch Rule purports to give the Corps's Philadelphia District the authority to deem ditches to be "waters of the United States" and wetland areas near such ditches to be "adjacent wetlands" and therefore "waters of the United States."

14.    Plaintiff NAHB also has a strong interest in public participation on jurisdictional policy issues.  This interest has been injured by the Corps's failure to comply with the APA and engage in notice and comment rulemaking.  By issuing the Ditch Rule without rulemaking proceedings, NAHB has been injured in an advocacy function, germane to its organizational mission, by being deprived the opportunity to submit comments to the Corps on whether ditches are CWA "navigable waters."

15.    The injuries to NAHB and its members can be redressed by this Court's order setting aside the illegally issued Philadelphia Ditch Rule and enjoining the Corps from using it.

16.    Defendant United States Army Corps of Engineers is a branch of the Department of the Army.  The Corps is authorized to issue permits for the discharge of dredged or fill material into navigable waters pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.  The Corps has

authorized its district engineers to make jurisdictional determinations regarding the applicability of the CWA.  33 C.F.R. § 320.1(a)(6).

17.    The Corps has eight divisions and forty one district offices.  The Philadelphia District has jurisdiction over Delaware and parts of New Jersey and Pennsylvania.

18.    NAHB has members who conduct home building activities within the jurisdiction of the Philadelphia District.

19.    Defendant Francis J. Harvey is sued in his official capacity as Acting Secretary of the Army.  In that capacity, Mr. Harvey is responsible for the supervision of the entire United States Army, including the Corps of Engineers and the Philadelphia District.

20.    Defendant Lt. Gen. Carl A. Strock is sued in his official capacity as the Chief of Engineers of the United States Army Corps of Engineers.  In that capacity, Lt. Gen. Strock is responsible on a daily basis for the Corps's implementation and administration of the CWA, nationwide and within the Philadelphia District.

21.    Defendant Lt. Col. Robert J. Ruch is sued in his official capacity as the Philadelphia District Engineer of the United States Army Corps of Engineers.  In that capacity, Lt. Col. Ruch is responsible on a daily basis for the Philadelphia District's implementation and administration of the CWA.

## STATEMENT OF FACTS

### A.    Statutory and Regulatory Background

22.    Congress enacted the CWA in 1972 to regulate the discharge of pollutants, including dredged and fill material, into the nation's navigable waters.  The CWA prohibits the discharge of a pollutant into navigable waters except in compliance with the Act's provisions.  CWA § 301, 33 U.S.C. § 1311.

23.    Section 404 of the CWA, 33 U.S.C. § 1344, authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites.

24.    Section 502(7) of the CWA, 33 U.S.C. §1362(7), defines "navigable waters" to mean the "waters of the United States, including the territorial seas."

25.    In 1986, the Corps promulgated rules to define "waters of the United States." 33 C.F.R. pt. 328 (2004) (codifying 51 Fed. Reg. 41206, 41250 (Nov. 13, 1986)).

26.    Under those regulations, navigable waters, interstate waters, intrastate waters with uses that could affect interstate or foreign commerce, impoundments of waters, tributaries of waters, territorial seas, and wetlands adjacent to other waters that are not themselves wetlands, are considered "waters of the United States." 33 C.F.R. § 328.3(a) (2004). But, ditches dug in uplands are not. 51 Fed. Reg. 41206 (Nov. 13, 1986).

27.    The Corps and EPA have not amended their rules defining "waters of the United States" in the twenty ensuing years. Indeed, they have resisted formal rulemaking, but instead have expanded their jurisdiction through "guidance" and ad hoc litigating positions.

28.    For example, in 1989, the U.S. Court of Appeals for the Fourth Circuit upheld a district court ruling that set aside a Corps memorandum that purported to extend CWA jurisdiction to isolated waters used as habitat by migratory birds that cross state lines. *Tabb Lakes, Ltd. v. United States*, 885 F.2d 866 (4th Cir. 1989), *aff'g*, 715 F. Supp. 726 (E.D. Va. 1988) ("*Tabb Lakes*"). The court held that the memorandum "[e]ffected a change in Corps policy intended to have the full force and effect of a substantive rule, [and found that] the Corps relied on the memorandum in reaching its jurisdiction determination." Accordingly, the court held the Corps could not rely on the memorandum without following notice and comment rulemaking

requirements of the APA, 715 F. Supp. at 728, and it set aside the agency action, which was

"found to be without observance of procedure required by law." *Id.* at 729.

29.     In response to *Tabb Lakes*, the Corps and EPA issued guidance stating that "the EPA and

the Corps intend to undertake as soon as possible an APA rulemaking process regarding

jurisdiction over isolated waters." *See* U.S. EPA and U.S. Dept. of Army, "Clean Water Act

Section 404 Jurisdiction Over Isolated Waters in Light of *Tabb Lakes v. United States*" (Jan. 24,

1990) (Attached as Exhibit 2). Sixteen years later, the agencies still have not initiated a

rulemaking.

30.     In 1997, the U.S. Court of Appeals for the Fourth Circuit invalidated the part of the 1986

rule that claimed jurisdiction over waters that "could affect" interstate commerce, 33 C.F.R.

§ 328.3(a)(3). *United States v. Wilson*, 133 F.3d 251, 257 (4th Cir. 1997). Following the

decision, the Corps and EPA issued a memorandum stating that they intended to initiate a

rulemaking. *See* U.S. EPA and U.S. Dept. of Army, "Guidance for Corps and EPA Field Offices

Regarding Clean Water Act Section 404 Jurisdiction Over Isolated Waters in Light of *United

States v. James J. Wilson*" (May 29, 1998) (Attached as Exhibit 3). To date, they have not.

31.     In 2001, the United States Supreme Court, in *Solid Waste Agency of Northern Cook

County v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) ("*SWANCC*"), held isolated,

intrastate non-navigable ponds are not "waters of the United States."

32.     On January 15, 2003, the Corps issued an Advance Notice of Proposed Rulemaking on

the Clean Water Act Regulatory Definition of "Waters of the United States" ("ANPRM"),

seeking comment on whether and how 33 C.F.R. Part 328 should be amended to account for the

decision of the Supreme Court in *SWANCC*. 68 Fed. Reg. 1991 (2003).

33.    The ANPRM specifically identified ditches as a key jurisdictional question, referring to the jurisdictional status of "ditches, culverts, pipes, storm sewers, or similar manmade conveyances."  68 Fed. Reg. at 1997.

34.    Despite *SWANCC* and other judicial decisions since the 1986 rulemaking, and the ANRPM acknowledging the need for review of the regulations, the Corps has not initiated a rulemaking.

>    **B.    The Philadelphia Ditch Rule**

35.    Prior to issuance of the Philadelphia Ditch Rule, the Corps did not regulate upland ditches as CWA "navigable waters."  *See* 51 Fed. Reg. 41206, 41217 (1986) ("For clarification it should be noted that we generally do not consider the following waters to be 'Waters of the United States.' … (a) Non-tidal drainage and irrigation ditches excavated on dry land.").  The governing Regulatory Branch Standard Operating Procedures state:

>    The preamble to 33 CFR Part 328 states that features excavated from uplands are not considered waters of the United States.  For example, a drainage ditch excavated in the uplands, and/or located along a roadway, runway, or railroad that only carries water from upland areas, is not considered jurisdictional, even if it supports hydrophytic vegetation.

Army Corps of Engineers, Regulatory Branch Standard Operating Procedures, Apr. 8, 1999, at 3.

36.    On January 27, 2003, the Philadelphia District changed the jurisdictional status of ditches, as memorialized in a Telephone Conversation Record ("Record") between Richard Hassel, Assistant Chief, Regulatory Branch, and John G. Brundage, Biologist, Dover Field Office.  (Attached as Exhibit 4)

37.    In the Record, Mr. Hassel informed the Dover Field Office of "a change in the Philadelphia District's policy regarding jurisdiction over man-made upland drainage ditches (formally [sic] upland drainage ditches were not regulated by the District in accordance with

federal regulations at 33 CFR 328.3 preamble page 41217, and Regulatory Branch Standard Operating Procedures dated April 8, 1999)."  Record, ¶ 1.

38.    The Record directs that "from this date forward, it is the District's policy that all upland drainage ditches located within the Philadelphia District shall be regulated as 'waters of the United States' if they are connected hydrologically to a tributary system."  *Id.* at ¶ 2.

39.    On July 3, 2003, the Philadelphia District issued a technical support document, "Clean Water Act Jurisdiction Over Streams and Ditches," memorializing the new Rule.  The Rule was signed by Frank J. Cianfrani, Chief, Regulatory Branch, Philadelphia District (hereinafter "Philadelphia Ditch Rule") (Attached as Exhibit 1).

40.    The Rule announced that "[d]itches, without regard to whether they have been dug in waters of the United States, including wetlands, are subject to Clean Water Act jurisdiction where they connect to other jurisdictional waters and function as tributaries to those waters."  *Id.* at ¶ 16.

41.    The Philadelphia Ditch Rule is final, consummates the Philadelphia District's position, and announces a new agency statement of general applicability and future effect designed to interpret and prescribe the CWA's jurisdictional limits.

42.    The Philadelphia Ditch Rule is binding on the Philadelphia District and the public, including NAHB's members, and constitutes a rule, as defined by the APA.

### C.    Application of the Philadelphia Ditch Rule to NAHB Members

43.    The Philadelphia District has applied and will continue to apply the Ditch Rule to NAHB members.

44.    For example, information on the Corps's website shows that the Philadelphia District initially disclaimed CWA jurisdiction over ditches on the property of one NAHB member. However, following issuance of the Philadelphia Ditch Rule, the District reversed its position

and decided that ditches on this property were "waters of the United States" and thus subject to

Corps regulation.  *See* Caldera Properties, LP (Skiba-Chandler Site), Administrative Appeal

Decision, Philadelphia District File No. 200201383-23, North Atlantic Division (Mar. 5, 2004)

(*available at* http://www.nad.usace.army.mil/Caldera%20_Skiba-

Chandler_%20Decision%20Document%20_2_.pdf.).

45.      In an administrative appeal of the jurisdictional determination referenced in ¶ 44, the

Corps's North Atlantic Division assessed the Philadelphia District's jurisdictional determination

on the property of NAHB's member and wrote:

> On 27 January 2003, the district implemented a new policy [*i.e.,*
> the Philadelphia Ditch Rule] regarding regulation of drainage
> ditches.    Under this new policy, the district now regulates
> discharges of dredged or fill material into all upland drainage
> ditches if they are connected hydrologically to a surface tributary
> system comprising waters of the United States.

*Id*.

46.      As evidenced by ¶¶ 44-45 and other information available on the Corps's website, the

Philadelphia District is applying the Ditch Rule with binding and future effect.  The Ditch Rule

is an agency statement of general applicability and future effect that interprets and prescribes

law.  The Ditch Rule constitutes a rule as defined by the APA.  The issuance of the Philadelphia

Ditch Rule violates the provisions of APA § 553, which require:

> (b)  General notice of proposed rule making shall be published in
> the Federal Register…. The notice shall include -
>
> > (1) a statement of the time, place, and nature of public rule
> > making proceedings;
> >
> > (2) reference to the legal authority under which the rule is
> > proposed; and
> >
> > (3) either the terms or substance of the proposed rule or a
> > description of the subjects and issues involved.

(c)   After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.…

47.    5 U.S.C. § 553.  The Philadelphia Ditch Rule was issued without publication in the Federal Register for public comment.

48.    The quality of agency decisionmaking depends in large measure upon receipt and consideration of comments from the public.  Formal rulemaking is designed to inform agencies about the real world impacts of a proposed regulation.

49.    The Ditch Rule should be declared violative of the APA, and the Philadelphia District should be enjoined from applying the Ditch Rule, because NAHB and the public have not had an opportunity to provide the Corps with information about the important functions served by ditches, the pervasiveness of ditches across the American landscape (*e.g.,* roadside ditches and agricultural ditches) and the extensive regulation of ditches through other federal programs, including regulations adopted by EPA under the CWA.

50.    EPA regulates ditches under CWA regulations for municipal separate storm sewer systems ("MS4s").  *See* 33 U.S.C. § 1342(p)(3)(B), (p)(4).  EPA's regulatory definition of MS4 expressly includes ditches that are designed and used for collecting or conveying stormwater. *See* 40 C.F.R. § 122.26(b)(8).  Under EPA regulations, MS4s that serve as "waste treatment systems" are expressly excluded from the definition of "waters of the United States."  *See* 40 C.F.R. § 122.2; *see also* Ann R. Klee, General Counsel, and Benjamin H. Grumbles, Assistant Administrator for Water, U.S. EPA, "Agency Interpretation on Applicability of Section 402 of the Clean Water Act to Water Transfers," at 18 n.18 (confirming agency's position that "waste treatment systems" like MS4s are "by definition" *not* "waters of the United States").

51.    The Philadelphia Ditch Rule treats all ditches as "waters of the United States."  This is inconsistent with EPA regulations that treat MS4s, including any ditches therein, as "point sources" and, therefore, not jurisdictional "waters of the United States."

52.    The Ditch Rule amends the Corps's and EPA's regulations defining "waters of the United States" and also amends EPA's MS4 regulations.  Regulations adopted through rulemaking may only be amended through rulemaking.

53.    The Philadelphia Ditch Rule should be declared to be in violation of the APA, and the Philadelphia District should be enjoined from applying the Ditch Rule for failure to comply with the APA.

### D.    Plaintiff's Injury

54.    Members of Plaintiff NAHB located within the Philadelphia District are regularly engaged in activities in, near, and around areas potentially or allegedly subject to federal jurisdiction as "waters of the United States" under the CWA, according to the Philadelphia Ditch Rule.

55.    Members of Plaintiff NAHB who engage in these activities are and will continue to be directly affected and injured by the Defendants' expansive and unlawful assertion of jurisdiction, and, unless this Court declares unlawful and sets aside the challenged rule, will continue to be injured in their pursuit of these activities.

56.    NAHB has been injured by the Corps's failure to allow NAHB to exercise its right to comment on the Philadelphia Ditch Rule before its issuance.

57.    NAHB members located within the Philadelphia District have been injured by the Corps's failure to provide them and other members of the public with an opportunity to comment on the Philadelphia Ditch Rule before its issuance and application to their activities.

58.     NAHB members located within the Philadelphia District have been injured by the Corps's reliance on the Ditch Rule to assert jurisdiction over geographic features on their property over which the Corps did not previously assert jurisdiction.

## CLAIMS FOR RELIEF

### COUNT ONE

59.     Plaintiff NAHB repeats and realleges, as if fully set forth here, each and every allegation set forth in paragraphs 1-58.

60.     The Philadelphia District has issued the challenged Ditch Rule, which is a final rule under the APA.  The Ditch Rule is an authoritative statement of the agency's position and is binding on both the Corps and the public.

61.     When issuing the Ditch Rule, the Philadelphia District did not issue a general notice of proposed rulemaking in the Federal Register, including:  (1) a statement of the time, place, and nature of public rulemaking proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved, as required by the APA.

62.     The Philadelphia District did not give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation, as required by the APA.

63.     The Philadelphia District also failed to adopt a concise general statement of its basis and purpose in issuing the Ditch Rule, as required by the APA.

64.     Therefore, NAHB is entitled to a declaratory judgment that the Philadelphia Ditch Rule violates Section 553 of the APA.

65.     The Court should set aside the Philadelphia Ditch Rule and should enjoin the Corps from making any jurisdictional determinations based upon the Philadelphia Ditch Rule until the Corps has complied with the APA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NAHB requests that this Court:

1.     Declare the final Philadelphia Ditch Rule to be in excess of statutory jurisdiction, authority, or limitations or short of statutory right;

2.     Declare the Philadelphia Ditch Rule to be unlawful and set it aside;

3.     Enjoin the Corps from relying on the Ditch Rule in making its jurisdictional determinations;

4.     Remand the Ditch Rule to the Corps for rulemaking proceedings consistent with the APA, including clarification of the definition of "waters of the United States" in the context of ditches; and

5.     Grant such other and further relief as the Court deems just and proper.


Date:  March 17, 2006                                    Respectfully submitted,


*Of Counsel*                                             _/s/ Karma B. Brown_____
Duane J. Desiderio (D.C. Bar No. 430211)                HUNTON & WILLIAM LLP
Thomas J. Ward (D.C. Bar No. 453907)                    Virginia S. Albrecht (D.C. Bar No. 357940)
Felicia K. Watson (D.C. Bar No. 468492)                 Karma B. Brown (D.C. Bar No. 479774)
National Association of Home Builders                    1900 K Street, N.W.
1201 15th Street, N.W.                                   Washington, D.C. 20006
Washington, D.C. 20005-2800                             (202) 955-1500
                                                        *Counsel for Plaintiff*
                                                        *National Association of Home Builders*