U.S. ARMY CORPS OF ENGINEERS
PHILADELPHIA DISTRICT

TECHNICAL SUPPORT DOCUMENT

CLEAN WATER ACT JURISDICTION
OVER STREAMS AND DITCHES

This Technical Support Document is provided with regard to Clean Water Act jurisdiction over streams and ditches:

1. The term "waters of the United States" is defined in 33 CFR 328.3, Regulatory Programs of the Corps of Engineers; Final Rule; November 13, 1986; page 41250.

2. The definition of "waters of the United States" presented in 33 CFR 328.3 identifies, in part, the following waters as subject to Clean Water Act jurisdiction:

   A. Tidal waters (33 CFR 328.3(a)(1));

   B. All interstate waters, including interstate wetlands (33 CFR 328.3(a)(2));

   C. All other waters, such as intrastate lakes, rivers, streams (including intermittent streams)...wetlands...natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce (33 CFR 328.3(a)(3));

   D. All impoundments of waters otherwise defined as waters of the United States under the definition (33 CFR 328.3(a)(4));

   E. Tributaries of waters identified in paragraphs 33 CFR 328.3(a)(1)-(4) (33 CFR 328.3(a)(5));

   F. The territorial seas (33 CFR 328.3(a)(6)); and

   G. Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1)-(6) (33 CFR 328.3(a)(7)).

3. The electronic message sent to Corps attorneys by Mr. Robert M. Andersen, Chief Counsel, Headquarters, Corps of Engineers, entitled "FW: SWANCC matrix and graphics", dated August 20, 2002, identified 15 Categories of Water Bodies, including the legal authorities regarding Federal regulation of each category of water body.

4. Of the 15 Categories of Water Bodies identified in the message, the following Categories are highlighted:

    A. Category 7, "All *tributaries* of waters listed above" (Emphasis added);

    B. Category 8, "All wetlands adjacent to any water listed above";

    C. Category 9, "Intermittent and ephemeral streams remain under CWA jurisdiction if they are *tributaries* to any of the CWA jurisdictional waters listed above" (Emphasis added);

    D. Category 10, "**Drainage and irrigation ditches** are subject to CWA jurisdiction where they connect to other jurisdictional waters and function as *tributaries* to those waters" (Emphasis added); and

    E. Category 11, "A *tributary* remains under CWA jurisdiction even if it flows through a man-made pipe for some portion of its length" (Emphasis added).

5. Item 6 of the Memorandum for Division and District Counsel, Subject: New Post-SWANCC Case: FD&P Enterprises, Inc. v. U.S. Army Corps of Engineers, signed by Mr. Martin R. Cohen, Assistant Chief Counsel for Litigation, and dated January 31, 2003, states "…Corps Districts within the 3rd Circuit [Philadelphia] shall continue to assert regulatory jurisdiction over waters (and adjacent wetlands) **hydrologically connected** to navigable waters." (Emphasis added)

6. Typically, those portions of a landscape that are subject to over-land flow (sheet flow) are not subject to Federal jurisdiction. Such areas are not discrete water conveyances.

7. In the absence of adjacent wetlands, Clean Water Act jurisdiction over non-tidal waters of the United States extends to the ordinary high water mark (33 CFR 328.4(c)(1)).

8. Clean Water Act jurisdiction in streams and in ditches that connect to other jurisdictional waters and function as tributaries to those waters extends to the ordinary high water mark.

9. The term "ordinary high water mark" means that line on the shore established by the fluctuations of water and indicated by physical characteristics such as [a] clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas (33 CFR 328.3(e)). In

streams, these features are typically formed by erosion and/or deposition due to the presence of flowing water.

10. Streams and ditches are discrete water conveyances that typically exhibit attributes identified as beds and banks.

11. The process of determining the geographic extent of areas subject to Clean Water Act jurisdiction is the same for both streams and ditches.

12. Typically, a stream begins where overland water flow is captured and concentrated by the landscape. Channels are typically carved by flowing water. Stream channel configuration is controlled by a variety of factors, including the grade over which water flows; the type of underlying material; the volume, periodicity, and duration of water flow; the sediment load; and age. In many headwater streams, the top of bank corresponds to the ordinary high water mark. However, due to slumping or other circumstances, the top of bank may not represent the ordinary high water mark, particularly in nonheadwater streams.

13. Streams that have been channelized, straightened, and/or relocated typically have beds and banks constructed by man. Channelized, straightened, and/or relocated streams retain their status as streams. The appearance of channelized, straightened, and/or relocated streams may be similar to or nearly indistinguishable from ditches.

14. Intermittent and ephemeral streams are subject to Clean Water Act jurisdiction.

15. Ditches are elongated, man-made cuts in the landscape that are typically excavated and graded to collect and/or direct water from one location to another. The presence of water in a ditch, given sufficient volume, periodicity, and/or velocity, will typically produce features characteristic of an ordinary high water mark.

16. Ditches, without regard to whether they have been dug in waters of the United States, including wetlands, are subject to Clean Water Act jurisdiction where they connect to other jurisdictional waters and function as tributaries to those waters.

17. Typically, naturally and artificially occurring swales are vegetated, shallow, elongated depressions on the landscape in which the occurrence, volume, and velocity of water flow are not sufficient to create erosional features, such as beds and banks. Such depressions are not typically subject to Clean Water Act jurisdiction.

18. For most of their lengths, streams and rivers are well developed and have clearly identifiable attributes, e.g., are located in the axes of valleys, conform to the surrounding topography, have beds and banks, have erosional features, flood plains, point

3

bars, channels, and bars. In headwater areas, or in disturbed landscapes or landscapes in which the hydrologic regime is changing, the starting point of a stream or tributary may be less well developed or may be changing in response to a new controlling base level. In order to determine the extent of Clean Water Act jurisdiction in circumstances where the upper terminus of a stream is not readily apparent, one must use one's best professional judgment, including one's knowledge of water, wetland, and upland habitats and evaluation of the surrounding topography; and, if necessary, evaluation of secondary sources, such as evaluation of aerial photography and stream gauge data.

19. Occasionally, the ordinary high water mark of a stream or ditch may not be readily apparent at the time of one's site inspection. The physical characteristics of an ordinary high water mark, e.g., a clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas may be sporadic, hidden under leaf litter, or otherwise not prominent due to the time of year, presence of drought conditions, or other considerations. Failure to identify an ordinary high water mark during a site inspection does not necessarily mean that the area being evaluated is not a water of the United States. In such circumstances, one must use her/his best professional judgment in evaluating the totality of circumstances affecting the site.

20. In identifying the limit of Clean Water Act jurisdiction involving non-tidal streams (in the absence of adjacent wetlands) and ditches that connect to other jurisdictional waters and function as tributaries to those waters (in the absence of adjacent wetlands), one must consider the following:

    a. Does the waterway have a surface hydrologic connection to a water of the United States subject to Clean Water Act jurisdiction;

    b. Are features characteristic of an ordinary high water mark present;

    c. The position of the waterway on the landscape;

    d. The time of year, including recent and past rainfall events and presence of drought conditions;

    e. The physical attributes of the waterway, including its width, depth and length; presence of bed and banks; erosional features; and other morphological attributes;

    f. Circumstances that have eliminated or masked features characteristic of an ordinary high water mark;

   g. Hydrologic attributes, including presence of water, including ground water; flow of water; and indications of fluctuating water levels;

   h. The presence and types of vegetation located within the waterway; and

   i. Any other attributes or circumstances not considered above, such as the presence of sediment bed load; evidence of water scour; presence of aquatic life, braided or sinuous channels, point bars, and/or channel bars; or other evidence of water flow.

_____
Frank J. Cianfrani, Chief, Regulatory Branch
Philadelphia District

7/3/03
_____
Date

5

