


# United States Environmental Protection Agency
Office of Wetlands, Oceans, and Watersheds
Washington, D.C. 20460

# United States Department of the Army
U.S. Army Corps of Engineers
Washington, D.C. 20314

Guidance for Corps and EPA Field Offices Regarding
Clean Water Act Section 404 Jurisdiction Over Isolated Waters
in Light of United States v. James J. Wilson

## 1. INTRODUCTION

a. On December 23, 1997, the U.S. Court of Appeals for the Fourth Circuit issued a decision in the case of United States v. Wilson, 133 F. 3d 251 (4th Cir. 1997). The decision resulted from an appeal from criminal convictions for discharging dredged and fill material into wetland areas subject to Clean Water Act (CWA) jurisdiction in Charles County, Maryland, by Mr. Wilson and two corporations, without obtaining the required CWA Section 404 permits. The Fourth Circuit overturned Mr. Wilson's criminal conviction because it identified legal errors in the jury instructions used in the case, as explained below. A petition for panel rehearing was denied January 26, 1998. The decision itself, press accounts of the decision, inquiries from the public, and discussions with Corps and EPA staff in the five states that comprise the Fourth Circuit all indicate the need for guidance regarding interpretation and implementation of that decision and restating the Corps' and EPA's longstanding interpretation of the regulations that describe CWA Section 404 jurisdiction over the various categories of waters of the United States.

b. The purpose of this memorandum is to explain the Wilson decision, to provide general guidance on the regulations concerning jurisdiction, and to provide specific guidance on jurisdiction applicable to the Fourth Circuit in light of Wilson. This guidance does not change the substantive requirements of existing Corps or EPA regulations, except to the extent necessary to comply with the decision of the Fourth Circuit Court of Appeals in the states comprising the Fourth Circuit. As described below, within the five states comprising the Fourth Circuit, the Corps and EPA will adhere to the holdings of law in the Wilson decision. At the same time, within the Fourth Circuit states, both the Corps and EPA will continue to assert CWA jurisdiction over any and all isolated water bodies, including isolated wetlands, based on the CWA statute itself, where (1) either agency can establish an actual link between that water body and interstate or foreign commerce and (2) individually and/or in the aggregate, the use, degradation or destruction of isolated waters with such a link would have a substantial effect on interstate or foreign commerce. This approach addresses the concerns of the Fourth Circuit regarding jurisdiction over these waters.

## 2. SCOPE OF THE DECISION

a. The three-judge panel of the Court of Appeals that decided the case produced three separate written opinions. In reading the decision, it is important to remember that the three-judge panel

produced legally binding holdings of law regarding only three matters: (1) the "criminal intent" that a judge and/or jury must find in order to convict any person of a criminal violation of the CWA, (2) whether the provision of the Corps regulation defining CWA jurisdiction over "isolated" water bodies (i.e., 33 CFR 328.3(a)(3)) is authorized by the CWA, and (3) the admissibility of expert testimony on legal interpretations. The United States believes that the Fourth Circuit's holdings of law on the first two issues were incorrect, and we reserve the right to litigate these issues in other circuits. The Fourth Circuit's decision in the Wilson case is not binding outside the Fourth Circuit, and therefore will not be implemented outside the Fourth Circuit (i.e., outside the states of Maryland, Virginia, West Virginia, North Carolina, and South Carolina). The first of the holdings of the Wilson decision (i.e., regarding "criminal intent") is primarily of concern to the U.S. Department of Justice (DOJ) whenever DOJ is considering whether, or how, to bring a criminal enforcement action under the CWA; the third holding relates to the conduct of trials. Neither of these issues will be discussed further in this memorandum. The focus of this memo is the issue of CWA jurisdiction.[1]

b. In addition to the three binding holdings of law noted above, two judges set out their views in conflicting, nonbinding discussions of two additional matters: (1) whether the CWA authorizes the United States to assert jurisdiction over "adjacent" wetlands even if those wetlands do not have a direct or indirect surface connection to other waters of the United States, and (2) whether the CWA authorizes the United States to assert CWA jurisdiction over the "sidecasting" of dredged material into waters of the United States during ditching or dredging activities in waters of the U.S. Because no binding decisions were reached on these matters, the Corps and EPA will continue to assert jurisdiction over adjacent wetlands and sidecasting activities consistent with our existing regulations and guidance. We believe that the opinion of Judge Payne, one of the judges on the panel, reflects a sound understanding of those regulations.

c. The Fourth Circuit's holding of law from Wilson that we must address is the following:

". . .we conclude that 33 CFR 328.3(a)(3) (1993) (defining waters of the United States to include those waters whose degradation 'could affect' interstate commerce) is unauthorized by the Clean Water Act as limited by the Commerce clause and therefore is invalid. . . ." (Slip opinion, page 3).

Although the Corps and EPA strongly disagree with that holding, we must implement it throughout the Fourth Circuit unless and until it is overruled or clarified in the context of another court decision. Consequently, in the Fourth Circuit, neither the Corps nor the EPA will cite or rely upon 33 CFR 328.3(a)(3) as the basis for asserting CWA jurisdiction over any area, until further notice. Nevertheless, this change in operating procedures does not necessarily mean that either the Corps or the EPA will decline to assert jurisdiction over any aquatic area in the Fourth Circuit states, for the reasons explained below.

## 3. GENERAL GUIDANCE REGARDING CWA JURISDICTION

a. In the Federal Water Pollution Control Act Amendments of 1972, the Congress directed the Federal Executive Branch to assert jurisdiction over all waters of the United States subject to Federal constitutional authority (primarily the authority of the "Commerce Clause" of the U.S. Constitution). (See, e.g., Conference Report, S. Rep. No. 236, 92d Cong., 2d Sess. at 144, reprinted in U.S. Code Cong. & Admin. News, p. 3822 (1972).) When the EPA and the Corps assert CWA jurisdiction nationwide over all waters of the United States, including wetlands, we are carrying out that statutory mandate. The Federal Courts have consistently upheld, and, in fact, required, this broad assertion of Federal jurisdiction under the CWA. (See, e.g., NRDC v. Callaway, 392 F. Supp. 685 (D.D.C. 1975);

United States v. Ashland Oil & Transportation Co., 504 F.2d 1317 (6th Cir. 1974); United States v. Byrd, 609 F. 2d 1204 (7th Cir 1979).)

b. The Corps of Engineers regulation at 33 CFR Part 328.3(a)[2] is intended to interpret, explain, and implement the CWA's statutory mandate to assert jurisdiction over all "waters of the United States" subject to Federal constitutional authority. These regulations provide an interpretive definition of the term "waters of the United States" (i.e., those aquatic areas subject to Federal CWA jurisdiction), as follows:

1. First, paragraph (a)(1) defines the term "waters of the United States" to include all of the traditional navigable waters of the United States (i.e., "All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide").

2. In addition, paragraph (a)(2) defines "waters of the United States" to include: "All interstate waters including interstate wetlands".

3. The next paragraph, (a)(3), further defines "waters of the United States" to include all water bodies (including all wetlands) that are intrastate and isolated (i.e., that do not eventually drain or flow into traditional navigable waters or interstate waters), but which still have connections with interstate or foreign commerce, and are subject to Federal jurisdiction under the Commerce clause.

4. The next paragraph, (a)(4), further defines "waters of the United States" to include any impoundment of any water body otherwise defined as a water of the United States under any other paragraph in 33 CFR 328.3(a).

5. The next paragraph, (a)(5), further defines "waters of the United States" to include all tributaries of any water body identified as a water of the United States under paragraphs (1) through (4) of 33 CFR 328.3(a).

6. The next paragraph, (a)(6), further defines "waters of the United States" to include the territorial sea.

7. Finally, paragraph (a)(7) defines "waters of the United States" to include all wetlands adjacent to any water body defined as a water of the U.S. in paragraphs (a)(1) through (6). <

c. It must be emphasized that 33 CFR 328.3(a)(3) applies only to, and should be cited only regarding, CWA jurisdiction over truly isolated water bodies (i.e., intrastate lakes, streams, prairie potholes, etc.) that have no connection with any tributary system that flows into traditional navigable waters or interstate waters. For any water body, including any wetland, that is part of, or flows into, or is a wetland adjacent to, a tributary system of traditional navigable waters or interstate waters, one should not cite 33 CFR 328.3(a)(3), but instead cite the relevant subsections of 33 CFR 328.3(a), such as subsection (a)(1) (covering traditional navigable waters); (a)(2) (covering interstate waters); (a)(5) (covering tributaries to navigable or interstate waters); and/or (a)(7) (covering adjacent wetlands). Of course, outside the Fourth Circuit, if the Corps and/or EPA determines that a water body is in fact isolated and intrastate, then 33 CFR 328.3(a)(3) may be cited as the basis for CWA jurisdiction. If there is a factual dispute over whether a water body is isolated, 33 CFR 328.3(a)(3) may be cited (outside the Fourth Circuit) as an alternative basis for jurisdiction with appropriate documentation included as to why it applies.

d. There are also two practical reasons why EPA and the Corps strongly prefer to assert and document CWA jurisdiction over an aquatic area as part of a tributary system to traditional navigable waters, or as wetlands adjacent to such a tributary system, rather than as an "isolated," intrastate water body under 33 CFR 328.3(a)(3). First, there is a more conclusive body of case law supporting CWA jurisdiction over an aquatic area based on that area's status as part of, or wetlands adjacent to, a tributary system to traditional navigable waters, rather than as isolated waters. The U.S. Supreme Court, in United States v. Riverside Bayview Homes, Inc., 474 U.S. 121 (1985), and many lower Federal Courts in other cases, have clearly upheld Federal CWA jurisdiction over all tributaries to traditional navigable waters, and over wetlands adjacent to those tributaries, based on the fact that, for example, pollutants placed in such tributaries or their adjacent wetlands can migrate through the tributary system into traditional navigable waters, and that flood storage eliminated upstream can cause flooding in the downstream tributary system. These principles apply whether a portion of the tributary system is intermittent or perennial (See, e.g., Quivira Mining v. U.S. Environmental Protection Agency, 765 F. 2d 126 (10th Cir. 1985), cert. denied, 474 U.S. 1055 (1986)). The Supreme Court has not yet directly addressed CWA jurisdiction over "isolated," intrastate water bodies that do not flow into tributaries to traditional navigable waters, although a number of lower federal courts have upheld federal CWA jurisdiction over isolated water bodies, including isolated wetlands. See, e.g., Hoffman Homes, Inc., v. EPA, 999 F.2d 256 (7th Cir. 1993); Leslie Salt Co. v. United States, 896 F. 2d 354 (9th Cir. 1990); Leslie Salt Co. v. United States, 55 F.3d 1388 (9th Cir. 1995), cert. denied sub. nom. Cargill, Inc. v. United States, 116 S. Ct. 407 (1995); United States v. Byrd, 609 F.2d 1204 (7th Cir. 1979); SWANCC v. U.S. Army Corps of Engineers, 1998 U.S. Dist. Lexis 3994 (N. Dist. Ill. 1998).

e. The second reason is a matter of ease of proof. When a water body is shown to be part of a tributary system to interstate or traditional navigable waters, that usually easily-established fact is sufficient to show that the water body can be regulated by the federal government under the commerce clause. United States v. Ashland Oil and Transportation Corp., 504 F.2d 1317 (6th Cir. 1974). For isolated waters under 33 CFR 328.3(a)(3), each water body must have its own nexus with interstate commerce: that is, the use, degradation or destruction of the isolated water body could affect interstate commerce (e.g., the water body in question would support the hunting of migratory game birds or other animals, or the harvesting of timber or other products, or the trapping of fur-bearing animals, or is suitable habitat for migratory birds, etc.). Paragraph (a)(3) of the regulation sets out a non-exclusive list of ways an isolated water body could have the necessary commerce connection. Additional examples are set out in preamble language (51 Fed. Reg. 41,217 (Nov. 13, 1986), 53 Fed. Reg. 20,765 (June 6, 1988)). This preamble discussion reflects a September 12, 1985, memorandum by the General Counsel of EPA explaining and asserting Clean Water Act jurisdiction over isolated waters based on their use by migratory birds and federally listed endangered or threatened species. Of course, for a particular "isolated," intrastate water body, Corps or EPA field staff may be able to document only some relatively small-scale connections between that water body and interstate and foreign commerce (e.g., that the isolated water body serves as habitat for migratory birds). Nevertheless, EPA and the Corps believe, and if necessary will demonstrate, that each of these classes of interstate commerce-related activities associated with isolated waters (e.g., migratory bird usage of isolated waters), taken as a whole or in the aggregate, has a substantial effect on interstate or foreign commerce, as required by United States v. Lopez, 514 U.S. 549, 1995.

## 4. GUIDANCE SPECIFIC TO THE FOURTH CIRCUIT

a. The remainder of this guidance addresses assertion of jurisdiction over isolated waters within the

Fourth Circuit until further notice. Although the written opinion in the Wilson case regarding 33 CFR 328.3(a)(3) is not entirely clear, it appears that the Court's fundamental objection to that provision of the Corps' regulation is that, by its terms, 33 CFR 328.3(a)(3) asserts CWA jurisdiction over isolated water bodies based on their potential, as opposed to actual, connections with interstate or foreign commerce. The court seemed concerned that this language fell short of the "substantial effect test." Consequently, the court declared that 328.3(a)(3) was invalid because it exceeded Congressional intent.

b. As stated above, while the Corps and EPA believe that the court's decision regarding the legality of the Corps' jurisdictional regulation is wrong, we will fully comply with and implement the Fourth Circuit's holding in the Wilson case (within the states constituting the Fourth Circuit) so long as it represents the controlling law on this point within the Fourth Circuit. Consequently, until further notice, neither the Corps nor the EPA will cite or rely upon the regulatory provision of 33 CFR 328.3(a)(3) as a basis for asserting CWA jurisdiction over any area for any purpose within the Fourth Circuit. Similarly, within the five states comprising the Fourth Circuit, neither the Corps nor the EPA will assert CWA jurisdiction over any isolated, intrastate water body where the only basis that the Government can establish for such jurisdiction would be potential effects on interstate or foreign commerce.

c. Nevertheless, both the Corps and EPA will continue to assert CWA jurisdiction over any and all isolated water bodies, including isolated wetlands, within the Fourth Circuit, based on the CWA statute itself, where (1) either agency can establish an actual link between that water body and interstate or foreign commerce, and (2) individually and/or in the aggregate, the use, degradation or destruction of isolated waters with such a link would have a substantial effect on interstate or foreign commerce. Those actual connections with and effects on interstate or foreign commerce may include all of the types of actual effects on interstate or foreign commerce that the Corps and EPA have traditionally relied on: for example, use for recreation by interstate or foreign travelers; use for taking fish or shellfish sold in interstate or foreign commerce; use by industries operating in interstate or foreign commerce; use by migratory waterfowl, other game birds, or other migratory birds that are sought by hunters, birdwatchers, or photographers, or are protected by international treaty, thereby affecting interstate commerce[3]; or use by federally listed endangered or threatened species. Corps and EPA headquarters will be compiling information on the aggregate effects of various activities on interstate commerce, so that, as the need arises, the Corps and EPA can document that, in the aggregate, the use, degradation, or destruction of isolated water bodies would have substantial effects on interstate or foreign commerce. Existing case law will assist this endeavor (e.g., for migratory birds see Hoffman Homes, 961 F.2d 1310 (7th Cir. 1992); for interstate travelers see Byrd, 609 F.2d 1204, 1209 (7th Cir. 1979); for endangered species, Palila, 471 F. Supp. 985, 991-995 (D. Haw. 1979), aff'd, 639 F.2d 495 (9th Cir. 1981), and National Association of Homebuilders v. Babbitt, 130 F.3d 1041 (D.C. Cir. 1997)).

d. Corps and EPA field offices within the Fourth Circuit should make it clear to members of the regulated public that both agencies will still assert jurisdiction over isolated water bodies, including isolated wetlands, on a case-by-case basis within the Fourth Circuit states, based on the CWA statute itself, where there is an actual connection between such water bodies and interstate or foreign commerce, and the effect on such commerce, individually and/or in the aggregate, is substantial. The Corps and EPA will work to minimize any delays or inconveniences to the regulated public that might attend the establishment of the actual connections with interstate or foreign commerce for individual isolated water bodies.

e. Previously issued Section 404 permits authorizing discharges into isolated waters in the Fourth Circuit remain in effect as issued. The Corps and the EPA do not believe that the Fourth Circuit's decision in the <u>Wilson</u> case requires the Corps to modify such previously issued permits or to delete permit conditions requiring compensatory mitigation for activities in isolated water bodies, or to delete other permit conditions relating to such waterbodies. Moreover, to the extent that jurisdiction over isolated waters is established as identified above, no modifications to existing practice for normal compensatory mitigation or other permit conditions are necessary for permits issued in the future for activities in isolated water bodies.

## 5. FURTHER INFORMATION

a. In the near future, EPA and the Corps intend to promulgate a rule addressing the jurisdictional issues discussed in this guidance, with full opportunity for public review and comment.

b. If you have any questions regarding this guidance memorandum, please contact your local EPA Regional Office or Corps District Office. For EPA Headquarters, please call John Goodin at (202) 260-9910. For Corps Headquarters, contact Sam Collinson at (202) 761-0199.

| | |
|---|---|
| Robert W. Wayland, III /s/ 5/29/98 | **FOR THE COMMANDER:**<br>Charles M. Hess /s/ 5/29/98 |
| Director, Office of Wetlands, Oceans, and Watersheds | Chief, Operations, Construction, and Readiness Division |
| Office of Water | Directorate of Civil Works |
| U.S. Environmental Protection Agency | U.S. Army Corps of Engineers |

---

1. The issue addressed by the court's opinion was whether the wetlands in question were jurisdictional, not how to determine whether an area is a wetland.

2. EPA's regulations contain equivalent (although not verbatim) definitions; the two agencies' regulations cover the same waters. For convenience, this discussion refers to the Corps' regulations.

3. Although <u>Tabb Lakes, Ltd. v. United States,</u> (715 F. Supp. 726, aff'd without opinion, 885 F.2d 866 (4th Cir., 1989)), concluded that EPA/Corps guidance could not be cited as the legal basis for interstate commerce nexus using migratory birds because that guidance had been issued without notice and comment, the decision did not prohibit the use of migratory birds to establish a connection to interstate commerce under the Clean Water Act. Consequently, notwithstanding the Fourth Circuit's decision in <u>Tabb Lakes</u>, Corps and EPA field offices should continue to assert CWA jurisdiction over all isolated, intrastate water bodies that serve as habitat for migratory birds.

---

[Wetlands Division homepage](#)

*Additional Questions?* Call our Wetlands Hotline at 1-800-832-7828 or send e-mail to wetlands-hotline@epamail.epa.gov.

**OWOW HOMEPAGE | EPA HOME | SEARCH | COMMENTS | WHAT'S NEW**
Environmental Protection Agency's Office of Wetlands, Oceans, Watersheds
URL: http://www.epa.gov/owow/wetlands/wilson.htm

10/22/98                                                                                    9:34:01 AM